1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 10 | COMMERCE WEST INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>MITCHELL KANE, et al.,<br><br>Defendants. | CASE NO. C18-0662JLR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

Before the court is Plaintiff Commerce West Insurance Company's ("Commerce

West") motion for summary judgment.  (MSJ (Dkt. # 10).)  Defendants Mitchell Kane,

Kimberly Kane, and Thomas Kane[1] (collectively, "the Kanes") oppose Commerce West's

---

[1] Because of Defendants' common last name, the court refers to individual Defendants by their first names for clarity.

ORDER - 1

1  motion. (Am. Resp. (Dkt. 19).)[2]  The court has reviewed the motion, all submissions

2  filed in support of and opposition to the motion, the relevant portions of the record, and

3  the applicable law.  Being fully advised,[3] the court GRANTS Commerce West's motion

4  for summary judgment for the reasons set forth herein.

## II.   BACKGROUND

6      In June 2010, Mitchell purchased a 2005 Yamaha moped.  (Roslaniec Decl. (Dkt.

7  # 11) ¶ 7, Ex. D ("Mitchell Dep.") at 16:6-19, 19:21-24, 20:18-21:11; *see also* Nichols

8  Decl. (Dkt. # 20) ¶ 2 Ex. A (attaching a copy of the January 31, 2018, Washington State

9  vehicle license for Mitchell's moped).)[4]  In 2011, Mitchell purchased a 2005 Subaru

10  Impreza.  (*Id.* at 13:20-25.)

11      On or about October 23, 2013, Commerce West entered into an insurance contract

12  with Kimberly and Thomas, who are Mitchell's parents.  (*See* Roslaniec Decl. ¶ 4, Ex.

13  A.)  Commerce West's Insurance Policy No. ACPA-001336700 ("the Policy") with

14  //

15

---

[2] The Kanes filed an initial response on July 9, 2018.  (Resp. (Dkt. # 13).)  However, on July 12, 2018, Commerce West filed a notice re-noting its motion from July 13, 2018, to July 20, 2018.  (Notice (Dkt. # 17).)  Commerce West stated that the Kanes "intend to file an amended response."  (*Id.* at 1.)  Accordingly, the court considers the Kanes initial response to be withdrawn and replaced by their amended response.  (*See* Am. Resp.)

[3] Neither party requests oral argument (*see* MSJ at 1; Am. Resp. at 1), and the court determines that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[4] Mitchell's testimony indicates that he purchased the moped in either 2009 or 2010.  (*See* Mitchell Dep. at 16:11-12.)  However, Mitchell's vehicle license indicates a report of sale on June 2, 2010.  (Nichols Decl. ¶ 2, Ex. A; *see also* Mitchell Dep. at 21:6-11 (concurring that he bought his moped on June 2, 2010)).  Whether Mitchell purchased his moped in 2009 or 2010 is immaterial for purposes of determining Commerce West's motion.

1 Kimberly and Thomas is for automobile insurance.[5] (*See generally id.; see also id.* ¶ 8,

2 Ex. E ("Thomas Dep.") at 14:1-8) ("Q: . . . Exhibit 1 . . . is a copy of the policy for you

3 and your wife that would have been in effect from October 2013 to October 2014 . . .

4 covering this accident. . . . Have you seen this policy before? A: Of course. I probably –

5 well, I undoubtedly bought it.").)

6        The Policy identifies Kimberly and Thomas as the "Named Insured(s)" and lists

7 the following vehicles: (1) a 2009 Chevrolet Tahoe, (2) a 2006 BMW 750I, (3) a 2001

8 Volkswagen GTI GLS, and (4) a 2002 Subaru Impreza WRX. (Roslaniec Decl. ¶ 4, Ex.

9 A at 1.) The Policy does not list any motorcycle, moped, or motor-driven cycle. (*See id.*)

10 Mitchell's siblings, Tyler and Steven, are also named on the Policy, but Mitchell is not.

11 (*See id.* at 3.) Thomas specifically required Mitchell to obtain his own automobile

12 insurance after Mitchell graduated from college, and Thomas removed Mitchell from the

13 Policy. (Thomas Dep. at 14:18-21, 16:22-17:8.) Indeed, Thomas decided to take

14 Mitchell off the Policy due to the expense and Thomas's belief that Mitchell needed to

15 get his own insurance. (*Id.* at 34:3-16.)

16 //

17 //

18        [5] In their initial response, the Kanes assert that "[t]he policy was amended." (Resp. at 7.)
In making this assertion, the Kanes rely upon Thomas's declaration, which attaches a copy of
19 what he states is the policy at issue. (Thomas Decl. (Dkt. # 12) ¶ 2, Ex. A.) The policy attached
as Exhibit A to Thomas's declaration, however, appears to be from IDS Property Casualty
20 Insurance Company or Ameriprise Insurance Company, but not from Commerce West. (*See
generally id.*) In any event, the Kanes neither reassert the argument that the Policy was amended
21 in their amended response (*see generally* Am. Resp.) nor rely upon Thomas's declaration (*id.* at
6 (relying upon the declarations of Peter Nichols (Nichols Decl. (Dkt. # 20)) and the declaration
22 of Chris Roslaniec (Roslaniec Decl.), but not Thomas's declaration)). Accordingly, the court
considers this argument to be withdrawn and does not consider it further.

1    In the spring of 2012, Mitchell obtained his own automobile insurance from State

2  Farm for his 2005 Subaru Impreza. (Mitchell Dep. at 14:1-22.) He maintained his

3  automobile insurance with State Farm through 2016. (*Id.* at 14:23-15:2.) However, he

4  did not obtain insurance for his moped because he did not believe that he was required to

5  do so. (*Id.* at 17:8-18:7.)[6]

6    On or about July 9 or 10, 2014, a drunk driver ran a stop sign and struck Mitchell

7  while he was riding his moped ("the Accident"). (Roslaniec Decl. ¶ 5, Ex. B at 7.)

8  Defendants assert that Mitchell incurred over $300,000.00 in medical bills as a result of

9  the Accident. (Resp. at 2.) The drunk driver had only $25,000.00 in insurance coverage.

10  (*See* Nichols Decl. ¶ 3, Ex. B.)

11  //

12  //

---

13  [6] Mitchell's testimony is as follows:

14  Q: Did you ever talk to [your parents] about getting insurance on the Yamaha
    through them?

15  A: No.
    Q: Did you ever talk to anybody at your parent's insurance company about adding
    the Yamaha?

16  A: To my knowledge, insurance is not required for that vehicle; so no, I did not.
    Q: What makes you believe that insurance wasn't required?

17  A: Because that engine size does not require insurance.
    Q: What is the engine size?

18  A: It was 49 cc's.
    Q: And where did you get the – the knowledge that a 49-cc engine does not require

19  insurance in Washington?
    A: Just research online.

20  Q: Your own research?
    A: Yes.

21  Q: Did you ever talk to anybody at State Farm about adding the Yamaha?
    A: Not that I recall.

22  (Mitchell Dep. at 17:11-18:7.)

1        Following the Accident, Mitchell submitted claims to Commerce West for

2 underinsured motorist ("UIM") and for personal injury protection ("PIP") benefits under

3 the Policy. (Roslaniec Decl. ¶ 6, Ex. C.) On May 7, 2018, Commerce West filed a

4 complaint for a declaratory judgment that the Policy does not provide coverage in the

5 form of UIM or PIP benefits for the damages and injuries incurred by Mitchell from the

6 Accident. (*See* Compl. (Dkt. # 1).) Commerce West now moves for summary judgment

7 on those same issues.

8                                 **III.    ANALYSIS**

9 **A.    Legal Standards**

10        Summary judgment is appropriate if the evidence, when viewed in the light most

11 favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

12 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

13 P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*,

14 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing

15 there is no genuine dispute of material fact and that he or she is entitled to prevail as a

16 matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, the

17 nonmoving party "must make a showing sufficient to establish a genuine dispute of

18 material fact regarding the existence of the essential elements of his case." *Galen*, 477

19 F.3d at 658.

20        The court is "required to view the facts and draw reasonable inferences in the light

21 most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

22 The court may not weigh evidence or make credibility determinations in analyzing a

1 | motion for summary judgment because these are "jury functions, not those of a judge."

2 | *Anderson*, 477 U.S. at 249-50.  Nevertheless, the nonmoving party "must do more than

3 | simply show that there is some metaphysical doubt as to the material facts . . . . Where

4 | the record taken as a whole could not lead a rational trier of fact to find for the

5 | nonmoving party, there is no genuine [dispute] for trial." *Scott*, 550 U.S. at 380 (internal

6 | quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

7 | 475 U.S. 574, 586-87 (1986)).

8 | The interpretation of an insurance policy is a question of law. *Pub. Util. Dist. No.*

9 | *1 of Klickitat Cty. v. Int'l Ins. Co.*, 881 P.2d 1020, 1025 (Wash. 1994).  "Whether an

10 | insurance policy contains an ambiguity is properly a question of law to be resolved by the

11 | court." *Baehmer v. Viking Ins. Co. of Wis.*, 827 P.2d 1113, 1115 (Wash. Ct. App. 1992).

12 | If policy language is clear and unambiguous, the court must enforce it as written.

13 | *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005).  If an insurance

14 | policy is unambiguous, summary judgment is proper even if the parties dispute the legal

15 | effect of a certain provision. *See State v. Brown*, 965 P.2d 1102, 1107 (Wash. Ct. App.

16 | 1998).

**B.    PIP Coverage**

The Policy's PIP coverage contains the following provision:

> A.  Subject to the Limits of Liability, if you pay the premium for Personal Injury Protection Coverage, we will pay personal injury protection benefits to or for an "insured" who sustains "bodily injury".  The "bodily injury" must be caused by an accident arising out of the ownership, maintenance or use of a "motor vehicle" as a "motor vehicle".

//

1 (Roslaniec Decl. ¶ 4, Ex. A at 7.) In the definitions section for the Policy's PIP coverage,

2 the following definition is added:

3     1. "Motor vehicle" means a self-propelled land motor vehicle designed for
       carrying ten passengers or less and used for the transportation of persons.
4        However, "motor vehicle" does not include a:

5                        \*\*\*\*\*\*\*\*\*\*\*\*

6        e. Moped as defined by Revised Code of Washington 46.04.305.
       f. Motorcycle.
7        g. Motor-driven cycle.

8 (*Id.* at 8.)

9     In his deposition, Mitchell admits that his moped is "motor driven" and requires

10 "100 percent gasoline." (Mitchell Dep. at 18:8-16.) Likewise, Thomas also admits that

11 Mitchell's moped "was motorized." (Thomas Dep. at 25:18-24.) In their amended

12 response to Commerce West's motion, the Kanes repeatedly describe the 2005 Yamaha

13 as a "moped." (Am. Resp. at 2 ("Mitchell . . . was knocked of [sic] his '<u>Moped</u>'."

14 (underlining in original), 7 ("Mitchell . . . was driving a moped . . . .").) Regardless of

15 whether the 2005 Yamaha is properly described as a "[m]oped" or a "[m]otor-driven

16 cycle," the PIP definition of "motor vehicle" expressly and unambiguously excludes such

17 vehicles. Thus, under the unambiguous terms of the Policy, there is no PIP coverage for

18 the injuries that Mitchell sustained from the Accident.[7] Consequently, Commerce West

19

20     [7] The Kanes provided no response to Commerce West's motion for a declaration on
summary judgment of no PIP coverage under the Policy. (*See generally* Am. Resp.) However,
even the complete lack of any opposition to a motion for summary judgment does not relieve the
21 moving party of its obligation to meet its burden of showing its entitlement to judgment as a
matter of law. *See N. Slope Borough v. Rogstad*, 126 F.3d 1224, 1227-28 (9th Cir. 1997)
22 (holding that the trial court erred by resting its grant of summary judgment on the opposing

1  is entitled to summary judgment on this issue, and the court grants Commerce West's

2  motion with respect to PIP coverage under the Policy.

3  **C.     UIM Coverage**

4       The Policy's UIM coverage excludes coverage for owned but uninsured vehicles.

5  (Roslaniec Decl. ¶ 4, Ex. A at 11.)  Specifically, the Policy provides in relevant part:

6       A.  We do not provide Underinsured Motorists Coverage for "property
            damage" or "bodily injury" sustained:

7

8       1.  By an "insured" while operating , or "occupying", any motor vehicle
            owned by the "insured" which is not insured for Liability Coverage under
            this policy. . . .

9

10 (*Id.*)  The parties dispute whether Mitchell is an insured under the Policy.  (*See* MSJ at

   11-13; Am. Resp. at 8-11.)  The court need not decide that issue, however, because even

11

   if Mitchell is an insured, his moped was "not insured for Liability Coverage" under the

12

   Policy.  The moped is not listed as an insured vehicle on the Policy's declaration page.

13

   (*Id.* ¶ 4, Ex. A at 1 (listing four vehicles but not the moped).)  Further, Mitchell admits

14

   that he purchased his own automobile insurance policy with State Farm in 2012, but did

15

   not insure the moped on either his policy or the Policy at issue here.  (Mitchell Dep. at

16

   14:9-22; 17:8-17.)  Accordingly, the Policy did not provide UIM coverage for the

17

   //

18

   //

19

20
   _____
   party's failure to file a response).  Here, despite the Kanes' failure to respond to Commerce
21 West's argument, the court has independently reviewed the relevant Policy language, concurs
   with Commerce West's assessment that the language unambiguously does not provide PIP
   coverage for Mitchell's injuries arising out of the Accident, and thus, grants Commerce West's
22 motion.

1  Accident, which occurred while Mitchell was "operating" the uninsured moped.[8] (*See*

2  Roslaniec Decl. ¶ 4, Ex. A at 11.)

3        The Kanes argue that this exclusion does not apply because "a moped is not a

4  motor vehicle by policy definition." (Am. Resp. at 8.)  Although the Kanes do not further

5  explain their argument, they apparently rely upon the definition of "motor vehicle"

6  contained in and exclusive to the Policy's PIP coverage. (*See* Roslaniec Decl. ¶ 4, Ex. A

7  at 8.)  As noted above, the PIP section of the Policy excludes a moped from the definition

8  of "motor vehicle." (*See id.*)  That definition, however, is contained within a section of

9  the Policy specifically entitled:  **"DEFINTIONS—PERSONAL INJURY**

10 **PROTECTION."** (*See id.*)  Further, the PIP definitions section specifically states: "The

11 Definitions section of the policy is amended as follows *for this coverage.*" (*Id.* (emphasis

12 added).)  Subsection "A" of the PIP definitions section "replace[s]" certain definitions in

13 the Policy for purposes of PIP coverage (*see id.* (replacing definitions for "family

14 member" and "family member")), whereas subsection "B" of the PIP definitions section

15 "add[s]" other definitions, such as "motor vehicle," for purposes of PIP coverage (*see id.*

16 (adding definitions for "motor vehicle," "named insured," "pedestrian," and "insured")).

17 Thus, the Policy unambiguously provides that the "replaced" and "added" definitions

18 apply only to PIP coverage. (*Id.*)  Further, throughout the Policy's PIP coverage section,

19

_____

20     [8] Commerce West also argues that the UIM provision of the Policy excludes coverage for
    motorcycles and motor-driven cycles. (MSJ at 10.)  The Kanes argue that this exclusion does not
21  apply because the vehicle at issue was neither a motorcycle nor a motor-driven cycle, but rather a
    moped. (Am. Resp. at 7-8.)  The court need not resolve this issue, however, because the Policy's
    UIM provision excludes coverage for any vehicle "which is not insured for Liability Coverage
22  under this policy." (*See* Roslaniec Decl. ¶ 4, Ex. A at 11.)

1 the term "motor vehicle" appears in quotations, indicating that the definition added to that

2 section applies. (*See id.* at 7-9.) The same is not true for the Policy's UIM section, in

3 which the term is not in quotations. (*See id.* at 11.) There is nothing in the Policy to

4 indicate that any of the "replaced" or "added" PIP coverage definitions—including the

5 definition for "motor vehicle"—apply to any other portion of the Policy or any other

6 coverages provided under the Policy. (*See generally id.*) Thus, the Kanes improperly

7 read into UIM coverage the definition of "motor vehicle" confined specifically to PIP

8 coverage under the Policy. The court rejects their argument.

9     The Kanes also argue that "denial of [UIM] coverage to Mitchell under these facts

10 is contrary to public policy as expressed in RCW 48.22.030(12)." (Am. Resp. at 11.)

11 RCW 48.22.030 authorizes UIM coverage in Washington State. *See Barth v. Allstate Ins.*

12 *Co.*, 977 P.2d 6, 10 (Wash. Ct. App. 1999). Subsection 12 states in pertinent part: "The

13 purpose of this section is to protect innocent victims of motorists of underinsured motor

14 vehicles." RCW 48.22.030(12). The Kanes do not elaborate on their argument but it is

15 contrary to the law in Washington. Subsection two of RCW 48.22.030 specifically

16 provides for an exception to the requirement that automobile insurance policies provide

17 UIM coverage: Insurers need not provide such coverage for insureds "operating or

18 occupying a motor vehicle owned or available for the regular use by the named insured or

19 any family member, and which is not insured under the liability coverage of the policy."

20 RCW 48.22.030(2). Mitchell's moped was "not insured under the liability coverage of

21 the policy" (*see* Roslaniec Decl. ¶ 4, Ex. A at 1), and thus, Commerce West was under no

22 statutory obligation to provide UIM coverage for the Accident, *see* RCW 48.22.030(2).

1    Further, Washington courts have expressly upheld this type of exclusion to UIM

2    coverage as consistent with the authorizing statute, *see Barth*, 977 P.2d at 11 ("[The

3    insurance company's] underinsured exclusion of a vehicle owned by a resident relative

4    and not insured under the policy does not conflict with the express statutory language

5    authorizing the exclusion."), and "[w]here the language of the exclusion closely tracks

6    the authorizing statute, [they have] repeatedly upheld the exclusion of a vehicle owned by

7    a family member that is not insured under the policy," *see id.* (citing *Schelinski v.*

8    *Midwest Mut. Ins. Co.*, 863 P.2d 564, 568-69 (Wash. Ct. App. 1993); *Anderson v. Am.*

9    *Econ. Ins. Co.*, 719 P.2d 1345, 1347-48 (Wash. Ct. App. 1986); *Brown v. United Pac.*

10   *Ins. Co.*, 711 P.2d 1105, 1108 (Wash. Ct. App. 1986)). Thus, the Washington Court of

11   Appeals has held that "[t]he exclusion of a vehicle owned by a family member that is not

12   insured under the policy is expressly allowed by the legislature and does not contravene

13   the purposes underlying the UIM statute." *Id.* The court, therefore, rejects the Kanes'

14   public policy argument.

15        Mitchell's moped was a fully motor-powered, self-propelled vehicle. (*See*

16   Mitchell Dep. at 18:8-16 (acknowledging that the moped was motor-driven, propelled

17   solely by gasoline, and without pedals); Thomas Dep. at 25:18-24 (acknowledging that

18   the moped was motorized and without pedals); *see also* RCW 46.04.320 ("'Motor

19   vehicle' means every vehicle that is self-propelled and every vehicle that is propelled by

20   electric power obtained from overhead trolley wires, but not operated upon rails.").

21   There is no dispute that Mitchell's moped was not an insured vehicle under the Policy.

22   (Roslaniec Decl. ¶ 4, Ex. A at 1; Mitchell Dep. at 14:9-22; 17:8-17.) Accordingly, the

1 | court concludes that the Policy provides no UIM coverage for the injuries that Mitchell

2 | sustained from the Accident, and the court grants Commerce West's motion for summary

3 | judgment on this issue.

4 |     In sum, the court grants Commerce West's motion for summary judgment and

5 | declares that the Policy provides neither UIM nor PIP coverage for the Accident in which

6 | Mitchell was riding his uninsured moped.

7 | **IV.  CONCLUSION**

8 |     Based on the foregoing analysis, the court GRANTS Commerce West's motion for

9 | summary judgment (Dkt. # 10).

10 |     Dated this 23 day of August, 2018.

11 |

12 | JAMES L. ROBART
United States District Judge

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |