UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMMERCE WEST INSURANCE COMPANY,<br><br>     Plaintiff,<br><br>  v.<br><br>MITCHELL KANE, et al.,<br><br>     Defendants. | CASE NO. C18-0662JLR<br><br>ORDER DENYING MOTION FOR CONSIDERATION |

## I. INTRODUCTION

Before the court is Defendants Mitchell Kane, Kimberley Kane, and Thomas Kane's (collectively, "the Kanes") motion for reconsideration of part of the court's order granting summary judgment to Plaintiff Commerce West Insurance Company ("Commerce West"). (*See* MFR (Dkt. # 26); *see also* SJ Order (Dkt. # 25).) Commerce West opposes the motion. (*See* Resp. (Dkt. # 28).) The court has considered the motion, the parties' submissions in favor of and in opposition to the motion, the relevant portions

of the record and the applicable law. Being fully advised,[1] the court DENIES the Kanes' motion.

## II. BACKGROUND

On or about October 23, 2013, Commerce West entered into an insurance contract with Kimberly and Thomas, who are Mitchell's parents.[2] (*See* Roslaniec Decl. (Dkt. # 11) ¶ 4, Ex. A ("Policy").) Commerce West Policy No. ACPA-001336700 ("the Policy") with Kimberly and Thomas is for automobile insurance. (*See generally id.*)

On or about July 9 or 10, 2014, a drunk driver ran a stop sign and struck Mitchell while he was riding his moped ("the Accident"). (*Id.* ¶ 5, Ex. B at 7.) Following the Accident, Mitchell submitted claims to Commerce West for underinsured motorist ("UIM") and for personal injury protection ("PIP") benefits under the Policy. (*Id.* ¶ 6, Ex. C.)

On May 7, 2018, Commerce West filed a complaint for a declaratory judgment that the Policy does not provide coverage in the form of UIM or PIP benefits for the damages and injuries Mitchell incurred in the Accident. (*See* Compl. (Dkt. # 1).) On June 21, 2018, Commerce West filed a motion for summary judgment on those same issues. (MSJ (Dkt. # 10).) The Kanes opposed Commerce West's motion. (Am. Resp.

//

---

[1] No party has requested oral argument (*see* MFR at 1; Resp. at 1), and the court considers oral argument to be unnecessary for its disposition of this motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Because of Defendants' common last name, the court refers to individual Defendants by their first names for clarity.

(Dkt. # 19).)³  On August 24, 2018, the court granted Commerce West's motion and declared that "the Policy provides neither UIM nor PIP coverage for the Accident in which Mitchell was riding his uninsured moped."  (SJ Order at 12.)

On September 7, 2018, the Kanes moved the court to reconsider the portion of its summary judgment order related to PIP coverage.  (*See* MFR.)  Commerce West opposes the motion.  (*See* Resp.)  The court now considers the Kanes' motion.

### III.  ANALYSIS

**A.  Standards for Reconsideration**

Motions for reconsideration are disfavored.  Local Rule W.D. Wash. LCR 7(h)(1).  The court will ordinarily deny such motions unless the moving party demonstrates (1) manifest error in the prior ruling, or (2) new facts or legal authority which could not have been brought to the attention of the court earlier with due diligence.  *Id*.  As discussed below, the court concludes that the Kanes have made neither showing with regard to the court's ruling on PIP coverage and no other extraordinary considerations warrant reconsideration of the court's prior order.

**B.  PIP Coverage**

The Policy's PIP coverage provides that Commerce West "will pay personal injury protection benefits to or for an 'insured' who sustains 'bodily injury.'"  (Policy at

//

---

³ The Kanes filed an initial response on July 9, 2018.  (Resp. (Dkt. # 13).)  However, on July 12, 2018, Commerce West filed a notice re-noting its motion from July 13, 2018, to July 20, 2018.  (Notice (Dkt. # 17).)  Commerce West stated that the Kanes "intend to file an amended response."  (*Id.* at 1.)  Accordingly, the court considered the Kanes' initial response to be withdrawn and replaced by their amended response.  (*See* SJ Order at 2, n.2.)

11.)[4] Further, "[t]he 'bodily injury' must be caused by an accident arising out of the ownership, maintenance or use of a 'motor vehicle' as a 'motor vehicle.'" (*Id.*) The quotation marks around a term indicate that its definition is provided in the Policy. (*See generally id.*) Indeed, the definitions section for the Policy's PIP coverage adds the following definition:

> 1. "Motor vehicle" means a self-propelled land motor vehicle designed for carrying ten passengers or less and used for the transportation of persons. However, "motor vehicle" does not include a:
>
> ************
>
>    e. Moped as defined by the Revised Code of Washington 46.04.304.
>
> ************
>
>    g. Motor-driven cycle.

(*Id.* at 12.) Based on the definition of "motor vehicle" in the PIP section of the Policy, which expressly does not include a moped or motor-driven cycle, and the undisputed fact that Mitchell was riding a moped or motor-driven cycle at the time of the accident, the court ruled that Commerce West was entitled to summary judgment on the Kanes' claim for PIP benefits arising out of the accident. (SJ Order at 6-8.)

The Kanes ask the court to reconsider this ruling because the other vehicle involved in Mitchell's accident was indisputably an automobile. (MFR at 2 ("This analysis overlooks the undisputed fact that Mitchell Kane's injuries were caused by the drunk driver's 'use of a "motor vehicle."'").) Therefore, the Kanes argue that the

//

---

[4] The court uses the page numbers at the upper right hand corner of the page, which are provided by its electronic docketing system.

Accident could be said to have "aris[en] out of the . . . use of a 'motor vehicle' as a 'motor vehicle'" as required by the Policy. (*See id.*; *see also* Policy at 11.)

However, to be eligible for PIP benefits, Mitchell also must qualify as an "insured" for purposes of PIP coverage. In pertinent part, the Policy defines an "insured"[5] for purposes of PIP coverage as (1) "any 'family member' while . . . '[o]ccupying or using . . . a 'motor vehicle,'" or (2) "any 'family member' while . . . [a] 'pedestrian' struck by . . . a 'motor vehicle.'"[6] (Policy at 13 (containing the definition of "insured").) There is no dispute that Mitchell does not fall within the first of these definitions. As noted above, the moped he was riding at the time of the Accident is not a "motor vehicle" under the PIP portion of the Policy, which expressly "does not include" a

//

//

---

[5] The PIP portion of the Policy also contains two other inapplicable definitions of the term "insured," including: (1) "[a]ny other person while . . . '[o]ccupying' or using . . . 'your covered auto,'" and (2) "[a]ny other person while . . . [a] 'pedestrian' struck by . . . 'your covered auto.'" (Policy at 13 (containing the definition of "insured").) The Policy, in turn, defines the term "your covered auto," in pertinent part, as "a 'motor vehicle' owned by the 'named insured' or 'family member.'" (*Id.* at 12 (containing the definition of "family member").) The first definition is inapplicable because there is no dispute that the moped Mitchell was using at the time of the Accident does not meet the definition of "motor vehicle" under the PIP portion of the Policy. (*See* SJ Order at 6-8.) Therefore, Mitchell's moped likewise cannot not meet the definition of "your covered auto," which is dependent on the definition of "motor vehicle." The second definition is inapplicable because there is no allegation in this litigation that the automobile that struck Mitchell was owned by a "named insured" or a "family member." (*See generally* Compl.)

[6] Commerce West argues that Mitchell does not meet the definition of a "family member" under the Policy's PIP coverage because he was not "a resident of the 'named insured's' household" at the time of the accident. (*See* Resp. at 7-9; *see also* Policy at 12 (containing the definition of "family member").) For purposes of this ruling, the court assumes that Mitchell was a "family member" under the policy. The court need not reach this issue because, as discussed in the body of this decision, the court concludes that Mitchell was not a "pedestrian" at the time of the Accident as that term is defined in the Policy for purposes of PIP coverage.

moped or motor-driven cycle. (*See* Policy at 12 (containing the definition of "motor vehicle").)

However, the parties dispute whether Mitchell qualifies as an "insured" under the second definition. (*See* MFR at 4; Resp. at 5-7.) The Kanes argue that, although Mitchell was riding his moped at the time of the Accident, he was still a "pedestrian" for purposes of PIP benefits due to the narrow definition of "motor vehicle" contained in the PIP portion of the Policy and the use of those words in the Policy's definition of "pedestrian." (*See* MFR at 4; *see also* Policy at 12.) Commerce West argues that Mitchell does not fall within the second definition of "insured" because he was not a "pedestrian" at the time of the Accident as that term is defined in the PIP portion of the Policy. (*See* Resp. at 5-7.) Specifically, Commerce West argues that the definition of "pedestrian" in the Policy employs the plain or common meaning of the words—motor vehicle—and not the Policy's defined term for "motor vehicle" that is used elsewhere in the Policy.[7] (*See id.*) Thus, the outcome of the Kanes' motion turns on the interpretation of the definition of a "pedestrian" under the Policy.

"The interpretation of insurance policies is a question of law, and in construing the language of an insurance policy, a court must construe the entire contract together so as to give force and effect to each clause." *Pub. Util. Dist. No. 1 of Klickitat Cty. v. Int'l Ins. Co.*, 881 P.2d 1020, 1025 (Wash. 1994). "An insurance policy provision is

---

[7] When the court uses quotation marks around the words "motor vehicle," it signifies that these words also have quotations around them in that section or at that point in the Policy. When the court surrounds those same words with em dashes, it signifies that the words are not enclosed by quotation marks in that section or at that point in the Policy.

ambiguous when it is fairly susceptible to two different interpretations, both of which are reasonable." *Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 871 P.2d 146, 152 (Wash. 1994). "If the language of an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists." *Pub. Util. Dist. No. 1*, 881 P.2d at 1025. As discussed below, the Kanes' proffered interpretation of term "pedestrian" runs afoul of these guiding principles of Washington law.

The PIP section of the Policy defines a "pedestrian" as "any person not 'occupying' a motor vehicle." (Policy at 12 (containing the definition of "pedestrian").) Although the word "occupying" appears in quotation marks within the definition, the words—motor vehicle—do not. (*See id.*) As previously recognized by the court, "throughout the Policy's PIP coverage section, the term 'motor vehicle' appears in quotations, indicating that the definition [of 'motor vehicle' that is] added to that section applies." (*See* SJ Order at 9-10.) As also recognized by the court, in other portions of the Policy, the term—motor vehicle—is not in quotations, and where the term is not in quotations the Policy's definition for that term does not apply. (*See id.* at 10.) The definition of "pedestrian" is the sole instance in the PIP portion of the Policy where the words—motor vehicle—do not appear in quotation marks. (Policy at 11-14 (containing the PIP provisions of the Policy).) Consistent with the foregoing use of quotation marks to designate a defined term under the Policy, the court concludes that the lack of quotation marks surrounding the words—motor vehicle—in the definition of "pedestrian" indicates that the Policy's narrow definition for "motor vehicle" does not apply and that

the words are to be given their plain meaning in that instance. *See Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990) ("Undefined terms in an insurance contract must be given their 'plain, ordinary, and popular' meaning.").

When determining the "plain, ordinary, and popular" meaning of a term in an insurance contact, "[i]t is appropriate to seek such meaning from standard English dictionaries." *Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 871 P.2d 146, 153 (Wash. 1994). The Merriam-Webster Dictionary defines motor vehicle as "an automotive vehicle not operated on rails" or "a vehicle (such as a car, truck, or motorcycle) that is powered by a motor." *See* https://www.merriam-webster.com/dictionary/motor%20vehicle (last accessed October 31, 2018). Further, Washington law defines "motor vehicle," in relevant part, as "every vehicle that is self-propelled . . . but not operated upon rails," *see* RCW 46.04.320, which is consistent with the foregoing dictionary definitions. Finally, the Kanes' agree that Mitchell's moped was a fully motor-driven, self-propelled, gasoline-powered vehicle. (*See* Roslaniec Decl. ¶ 7, Ex. D ("Mitchell Dep.") at 18:8-16 (acknowledging that the moped was motor-driven, propelled by gasoline, and without pedals); *id.* ¶ 8, Ex. E ("Thomas Dep.") at 25:18-24 (acknowledging that the moped was motorized and without pedals).) Thus, the words—motor vehicle—as used in the definition of "pedestrian" would include a vehicle such as Mitchell's moped. Because Mitchell was "occupying"[8] his moped at the time of the

//

---

[8] The Policy defines the term "occupying" as "1. In; 2. Upon; or 3. Getting in, out or off." (Policy at 5 (containing the definition of "occupying").)

Accident, he was not a "pedestrian" as defined in the Policy and therefore not an "insured" for purposes of PIP benefits.

The Kanes argue, however, that the court should not apply the "plain, ordinary, and popular" meaning of the words here, *see Boeing Co.*, 784 P.2d at 511, but rather the narrow definition of "motor vehicle" that is contained in the Policy's PIP section. The Kanes make this argument despite the fact that the words—motor vehicle—are not enclosed by quotation marks when used in the definition of "pedestrian." (*See* MFR at 4.) As discussed above, the definition of "motor vehicle" contained in the PIP section of the Policy expressly "does not include a . . . [m]oped . . . ." (Policy at 12.) Thus, if the court were to interpret the Policy provisions as the Kanes suggest, Mitchell would qualify as an "insured" under the PIP section of the Policy because—although he was riding a moped at the time of the Accident—his moped would not be considered a "motor vehicle" for purposes of defining the term "pedestrian."

The Kanes' proffered interpretation, however, effectively renders superfluous the definition of "pedestrian" as used in this portion of the Policy. As noted above, the first definition of an "insured" includes "any 'family member' while . . . '[o]ccupying' or using . . . a 'motor vehicle.'" (Policy at 13.) The second definition of "insured" includes "any 'family member' while . . . a 'pedestrian' struck by . . . a 'motor vehicle.'" (*Id.*) If one incorporates the definition of "pedestrian"—as modified by the Kanes to utilize the Policy's defined term for "motor vehicle"—into this definition of "insured," then an "insured" becomes: "any 'family member' while" "not 'occupying' a 'motor vehicle'" and "struck by a 'motor vehicle.'" (*See id.* at 12-13.) Thus, an "insured" is either any

family member while occupying a "motor vehicle" or any family member while not occupying a "motor vehicle" and stuck by a "motor vehicle." (*See id.*) Under the Kanes' interpretation, the definition of "pedestrian" creates no distinction in the definition of "insured" and, thus, is rendered redundant and meaningless. In other words, there is no need to utilize the definition of "pedestrian" at all in defining an insured in this portion of the Policy. The same is not true if, as proponed by Commerce West, the words—motor vehicle—as they appear in the definition of "pedestrian" are treated as undefined words in the Policy and given their "plain, ordinary, and popular" meaning. *See Boeing Co.*, 784 P.2d at 511. Then the definition of "pedestrian" is not superfluous as used in the definition of "insured," and indeed it adds meaning and content to the Policy.

The court concludes that the Kanes' proffered interpretation does not "give force and effect to each clause" in the Policy, *see Pub. Util. Dist. No. 1*, 881 P.2d at 1025, and, accordingly, is not a reasonable interpretation, *see Lynott*, 871 P.2d at 152. The court concludes, therefore, as a matter of law, that the Policy provisions at issue are unambiguous, enforces them as written, and applies the "plain, ordinary, and popular" meaning of the words—motor vehicle—as those words appear in the definition of "pedestrian." *See Boeing Co.*, 784 P.2d at 511. As a result, Mitchell was not a "pedestrian" at the time of the Accident, and therefore, also not an "insured" for purposes of PIP benefits under the Policy. (*See* Policy at 12-13.) In sum, the Kanes are not entitled to PIP benefits on Mitchell's behalf for the damages and injuries he incurred as a result of the Accident while he was riding his moped.

//

## IV.  CONCLUSION

Based on the foregoing analysis, the court concludes that the Kanes have not met their burden of demonstrating either (1) manifest error in the court's prior ruling, or (2) new facts or legal authority which could not have been brought to the attention of the court earlier with due diligence.  *See* Local Rules W.D. Wash. LCR 7(h)(1). Accordingly, the court DENIES the Kanes' motion for reconsideration of its ruling granting summary judgment to Commerce West on the Kanes' claim for PIP benefits under the Policy (Dkt. # 26).

Dated this 2nd day of November, 2018.

JAMES L. ROBART
United States District Judge